UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Karen Nixon, Theodore Driscoll, Andrew Matthews, Patrick Carozza, John Butkevicius, Stephen Sampson, Theresa Freeman, and Benjamin Pagoni,<br>    *Plaintiffs*,<br><br>    *v.*<br><br>Richard Blumenthal, Arnold Menchel, William Gundling, Jeffrey Meyers, and John/Jane Does 1–5,<br>    *Defendants.* | Civil No. 3:08cv1933 (JBA)<br><br><br><br><br>March 11, 2010 |

RULING ON MOTIONS TO DISMISS [Doc. ## 20, 22]

Plaintiffs Karen Nixon, Theodore Driscoll, Andrew Matthews, Patrick Carozza, John Butkevicius, Stephen Sampson, Theresa Freeman, and Benjamin Pagoni (collectively, "Plaintiffs"), all of whom are law enforcement officers of the Connecticut State Police ("CSP") in the Department of Public Safety ("DPS"), brought suit against Connecticut Attorney General Richard Blumenthal and assistant Attorneys General William Gundling and Arnold Menchel (collectively, the "OAG Defendants"), Jeffrey Meyers (a former employee of the Office of Attorney General ("OAG")), and John/Jane Does 1–5 (collectively, the "DPS Defendants"), who are DPS employees in management or other high-ranking positions. In their Amended Complaint [Doc. # 19], Plaintiffs allege that the OAG Defendants retaliated, and the OAG Defendants and DPS Defendants conspired to retaliate, against Plaintiffs for their protected speech. They also assert "alternative" state-law claims against Meyers for fraudulent misrepresentation and negligent and intentional infliction of emotional distress. The OAG Defendants and Meyers each have moved to dismiss all claims

against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  As discussed below, the motions will be granted because Plaintiffs' First Amendment retaliation claim alleges no specific adverse action, and their whistleblower claim asserts no violation of any affirmative OAG duty to protect, and whistleblowers do not enjoy § 1985(3) protections.  In addition, because Plaintiffs raise only a § 1985(3) claim against the unnamed DPS Defendants, which cannot proceed because Plaintiffs are not protected by that statute, that claim will also be dismissed.

I.     Facts

The Amended Complaint alleges the following facts.  In or before 2006, Plaintiffs participated in a review and study of the CSP Internal Affairs function conducted by the OAG and the New York State Police.  They sought OAG protection by registering as whistleblowers cooperating in an active investigation of corruption within DPS.  The report found widespread malfeasance, including criminal offenses committed by state troopers that had been overlooked by senior officials.  (Am. Compl. [Doc. # 19] at ¶¶ 14–18.)  Plaintiffs expressed to the OAG "concern for their professional status, and in some instances, fears for their physical safety, arising from their cooperation with the New York authorities, and as whistleblowers in general" and complained "about perceived acts of retaliation from superiors and colleagues in the [DPS] arising from their role as whistleblowers."  Plaintiffs further allege that they work "amid considerable fear and anxiety and in an atmosphere permeated by hostility."  (*Id.* at ¶¶ 21, 23, 25–26.)  According to Plaintiffs, the OAG

Defendants did not "complete reports, interview witnesses, or otherwise close investigations of whistleblower complaints" except for that by Plaintiff Matthews, and shared confidential information regarding Plaintiffs' whistleblowing activities with senior DPS officials. Plaintiffs allege that "by permitting, condoning, and/or acquiescing in the sharing of confidential information about the Plaintiffs" with DPS, the OAG Defendants "failed, refused, and/or were deliberately indifferent" to their "duty and responsibility to assure that the Plaintiffs were protected from retaliation" by DPS. (*Id.* at ¶¶ 26, 32–33.)[1]

Plaintiffs allege, "[i]n the alternative, to the degree that each of the [OAG Defendants and the DPS Defendants] denies participation in any conspiracy or that confidential information was shared between the units of the [OAG]," that since 2006, Meyers, who was employed by the OAG until December 2008, had informed Plaintiffs that the OAG Defendants were sharing confidential information from whistleblower activities with the DPS Defendants, and he had corroborative documents in his possession. (*Id.* at ¶¶ 8, 29–30, 41.) During the time he was an OAG employee, Meyers placed hundreds of phone calls over several years to Plaintiffs encouraging them to bring suit against the Attorney General, and informed Plaintiffs of confidential meetings and confidential memoranda shared among Defendants that he said would bolster such a suit. Meyers also drafted letters of complaint to the Attorney General and Freedom of Information complaints on behalf of one or more

---

[1] Six of the eight Plaintiffs (Matthews, Carozza, Butkevicius, Sampson, Freeman, and Pagoni) have also filed federal lawsuits against DPS senior managers and members for retaliation. (*Id.* at ¶ 24; Defs.' Mem. Supp. [Doc. # 22-2] at 2 n.1 (listing cases).)

of the Plaintiffs, and funded private counsel services for two of the Plaintiffs. (*Id.* at ¶ 31(c)–(h).)

II. Standards

   A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Conclusory allegations are not sufficient. *Id.* at 1949–50.

   B. Qualified Immunity

Government officials are immune from liability for civil damages when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The two-pronged qualified-immunity inquiry mandated in *Saucier v. Katz*—which asks first, whether "the facts alleged show the officer's conduct violated a constitutional right," and if so, second, "whether the right was clearly established," such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier*, 533 U.S. 194, 201–02 (2001) (citations

4

omitted)—may take place in any order "in light of the circumstances in the particular case at hand," *Pearson*, 129 S. Ct. at 818, so long as the "immunity questions" are resolved "at the earliest possible stage in litigation," *id.* at 815 (internal quotations omitted).

III.   Federal-Law Claims

    A.   § 1983: First Amendment Retaliation by the OAG Defendants

At oral argument, Plaintiffs clarified their First Amendment retaliation claim to be against the OAG Defendants, and they allege the OAG Defendants' retaliation against them for exercising their First Amendment rights as whistleblowers to have occurred in two ways. First, the OAG Defendants failed to provide them protection afforded by state whistleblower-protection laws by determining not to "complete reports, interview witnesses, or otherwise close investigations of whistleblower complaints, effectively depriving the Plaintiffs of the protection of the law." (Am. Compl. at ¶¶ 10, 22.)  Second, the OAG Defendants shared with DPS information that OAG obtained about Plaintiffs from the Plaintiffs' complaints to OAG about DPS's retaliation, which resulted in additional retaliation by DPS.  (*See id.* at ¶ 31a.)

        1.   OAG's Retaliation Based on Information-Sharing

Plaintiffs contend that the DPS Defendants retaliated against them for their whistleblowing activities in violation of the First Amendment and that the OAG Defendants took affirmative action constituting First Amendment retaliation by "permitting, condoning, and/or acquiescing in the sharing of confidential information about the Plaintiffs with

5

members of senior management of the [DPS]." (Am. Compl. at ¶¶ 10–12, 32–33.) As a result, Plaintiffs allegedly work "in an environment permeated by hostility to them as whistleblowers" and are "continually discriminated against." (*Id.* at ¶¶ 34–35.)

To survive a motion to dismiss on this First Amendment retaliation claim, Plaintiffs must allege that (1) their speech or conduct was protected; (2) they suffered an adverse employment action; and (3) a causal connection exists between the protected speech and the adverse action. *See, e.g., Burkybile v. Bd. of. Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 313 (2d Cir. 2005) (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)). The parties agree that Plaintiffs' speech involved matters of public concern and was therefore protected. *See, e.g., Morris*, 196 F.3d at 110 ("As a general rule, speech on 'any matter of political, social, or other concern to the community' is protected by the First Amendment." (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The Court concludes that Plaintiffs have not stated a claim for First Amendment retaliation because they cannot show that they have suffered an adverse employment action.

An employment action is adverse if it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *See, e.g., Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) (internal quotation omitted). Adverse actions include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," as well as "lesser actions" such as negative evaluation letters or express accusations of lying. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006)

6

(internal quotations omitted). A disciplinary hearing that "permits suspension with pay and carries with it the threat of possible termination," and "also cause[s] [a plaintiff] to incur the expense and inconvenience of extensive litigation," is an adverse employment action because it carries "consequences [that] are clearly deterrents for even a person of ordinary firmness." *Burkybile*, 411 F.3d at 308–09, 313–14. The "contextual determination" of whether "an undesirable employment action" can be deemed "adverse" requires that the "alleged act of retaliation [be] more than de minimis." *Zelnik*, 464 F.3d at 226 (internal quotations omitted). "[V]ague and conclusory" allegations of other forms of employment actions where a plaintiff endures no reductions in pay, benefits, or working hours, continues to exercise the same level of authority, and experiences no substantial change in job duties, are insufficient. *Morris*, 196 F.3d at 108, 112.

The adverse action described in Plaintiffs' complaint is the OAG Defendants' information-sharing prompting their concerns for their professional status, fears for their physical safety, and a work environment filled with "fear," "anxiety," and hostility. Plaintiffs' complaint contains no allegations of refusals to promote, disciplinary actions, or demotions. The action of information-sharing, although it resulted in Plaintiffs' concerns for professional status or fears for safety, bears no resemblance to the types of employment actions considered adverse. In *Morris* and *Zelnik*, the Second Circuit rejected retaliation claims resting on much more specific actions taken by employers. In *Morris*, a town's police chief alleged that after he had initiated "several lawsuits" against the town, the town board

"amended the procedures and policies of the [Police] Department in a manner intended to substitute the Town supervisor for the chief of police, and vest in the supervisor direct and absolute administrative control of the day-to-day operations of the Department," and required the plaintiff to give the board prior notice of his planned conduct at press conferences.  196 F.3d at 108.  The Second Circuit held that these amendments and requirements did not constitute a constructive demotion because the plaintiff's "job did not substantially change as a result," that the plaintiff "in fact retained control over the Police Department" as evidenced by his successful refusal to implement orders from the supervisor, and that the plaintiff "suffered no reduction in pay, benefits, or working hours." *Id.* at 112.  In *Zelnik*, a retired professor sued his former employer, alleging that the employer failed to afford the plaintiff status as a Professor Emeritus.  The Second Circuit held that this failure "was not an adverse action because the benefits of such status" are "merely honorific" and therefore "carry little or no value," and thus "their deprivation therefore may be classified as de minimis."  464 F.3d at 227.

In contrast to *Morris* and *Zelnik*, Plaintiffs' complaint describes Plaintiffs' own perceptions of circumstances which could result from unspecified future actions which might be taken by Plaintiffs' employer.  Plaintiffs allege that an OAG report "[identifies] [P]laintiff Sergeant Andrew Matthews as a whistleblower who had been retaliated against," but their pleadings do not describe what form this retaliation took and by whom it was taken.  In sum, Plaintiffs do not allege having suffered any negative consequences of OAG's

8

information-sharing beyond vague and unspecific descriptions of their own perceptions of their workplace. An allegation that "retaliat[ory]" actions were taken is conclusory. Because Plaintiffs have failed to assert any specific factual allegations from which a plausible inference could be drawn that, as a result of any "adverse action" by Defendants, they have suffered any specific consequences that would deter a person of ordinary firmness from exercising his or her constitutional rights, their claim of retaliation must therefore be dismissed.

2. OAG's Failure to Protect Whistleblowers From DPS' Retaliation

Plaintiffs claim that the OAG Defendants retaliated against them by declining to assist them in preventing or challenging retaliation by their employer, DPS. "[A] government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act." *Musso v. Hourigan*, 836 F.2d 736, 743 (2d Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976)). Connecticut's whistleblower statute provides that after a person determines to "transmit all facts and information in such person's possession concerning such matter to the Auditors of Public Accounts"—that is, to become a whistleblower—the Auditors of Public Accounts are required to "review such matter and report their findings and any recommendations to the Attorney General." Conn. Gen. Stat. § 4-61dd(a). The statute, however, imposes no specific duties on the Attorney General, and instead vests the office with substantial discretion to determine how to respond to a whistleblower's disclosures.

9

The statute requires that "[u]pon receiving such a report, the Attorney General shall make such investigation as the Attorney General *deems proper* regarding such report" and grants the Attorney General authority to collect evidence "*where necessary*" in whatever investigation has been "*deemed appropriate* by the Attorney General." *Id.* (emphases added). In addition, the statute permits the Attorney General to disclose a whistleblower's identity without the whistleblower's consent if "*the Attorney General determines* that such disclosure is unavoidable." *Id.* (emphasis added). The statute also imposes no particular post-investigation duty on the Attorney General, instead providing that "the Attorney General shall *where necessary*, report any findings to the Governor, or . . . to the Chief State's Attorney." *Id.* (emphasis added). Finally, the statute provides for the same process when a whistleblower complains to the Attorney General that a "personnel action" has been taken against him "in retaliation" for the whistleblowing. *Id.* § 4-61dd(b)(1), (2).

Plaintiffs point to no language in the whistleblower statute that imposes any duty on the OAG Defendants beyond conducting any such investigation that they determine to be "proper" into a whistleblower's claims (whether of improper conduct or of retaliation), in connection with which they are vested with discretion to decide whether and how to proceed. Because the whistleblower statute provides no basis for concluding that the OAG Defendants had any duty to prevent DPS from retaliating against Plaintiffs, and Plaintiffs point to no legal authority supporting a conclusion that such a duty exists, the OAG

10

Defendants are not "liable for failing to prevent [DPS employees] from violating [Plaintiffs'] constitutional rights." *Musso*, 836 F.2d at 743.[2]

### B.     § 1985(3): Conspiracy Between the OAG Defendants and DPS Defendants

Plaintiffs assert that the OAG Defendants and the DPS Defendants "engaged in or condoned a conspiracy . . . to deprive Plaintiffs of their rights" in violation of 42 U.S.C. § 1985(3). (Am. Compl. at ¶ 11.) Section 1985(3) prohibits conspiracies to deprive persons of equal protection of the laws, is not a "general federal tort law," and does not provide a cause of action based on the denial of due process or other constitutional rights. *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971). A claim of violation of § 1985(3) requires proof that: (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws, with the conspiracy being motivated by a racial or otherwise class-based invidious discriminatory animus; (3) an overt act was taken in furtherance of the conspiracy; and (4) there resulted an injury to his person or property, or a deprivation of a right or privilege. *Id.* at 102–03; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993); *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 833 (1983).

---

[2] In the absence of any clearly established legal basis for the duty to protect Plaintiffs or prevent the DPS employees' retaliation that Plaintiffs assert, the OAG Defendants are also entitled to qualified immunity. *See Musso*, 836 F.2d at 743–44 (granting defendant qualified immunity where defendant did not "labor[] under a 'clearly established' affirmative duty to prevent other[s] . . . from infringing on [the plaintiff's] [F]irst [A]mendment interests."); *see also Pearson*, 129 S. Ct. at 815 (stating qualified-immunity standard (quoting *Harlow*, 457 U.S. at 818)).

Plaintiffs argue that they fall within three classes that might qualify for protection under § 1985(3): whistleblowers, whistleblowers who are law enforcement officers, and law enforcement officers. Plaintiffs' status as law enforcement officers cannot support their § 1985(3) claim because no allegations in their complaint support any inference that DPS acted out of discriminatory animus toward law enforcement officers. *Cf. Bray*, 506 U.S. at 272 (no class-based animus if action is taken "in spite of" class membership). And although § 1985(3) has been extended to prohibit conspiracies based on discriminatory animus on the basis of classes other than race,[3] the Second Circuit "ha[s] never extended § 1985(3) protection to whistleblowers," and in fact expressly "decline[d] to do so" in 1999. *See Tavolini v. Mount Sinai Med. Ctr.*, 198 F.3d 235 (Table), 1999 WL 972656, *2 (2d Cir. Oct.

---

[3] *See Bray*, 506 U.S. at 269, 272 ("[T]he term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." Instead, a class-based animus "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.") (internal quotation marks omitted). In the Second Circuit, § 1985(3) protections extend to classifications based on religion and political party. *See Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) ("Several courts, including this one, have defined 'class-based animus' to include discrimination based on religion." (collecting cases)); *Keating v. Carey*, 706 F.2d 377, 379 (2d Cir. 1983) ("we hold that Republicans are a protected class for the purpose of § 1985(3) (as would be Democrats or members of any political party, in the circumstances herein alleged)"). But the statute does not protect against discrimination on the basis of economic or commercial animus, mere political disagreement, or leadership in employment. *See Scott*, 463 U.S. at 838 (§ 1985(3) cannot be "construe[d] . . . to reach conspiracies motivated by economic or commercial animus"); *Arteta v. County of Orange*, 141 F. App'x 3, 4 (2d Cir. 2005) ("This Court has found that a plaintiff who . . . contends that he was discriminated against because he was a political opponent of the defendants is not a member of a protected class under § 1985." (citation omitted)); *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (applying *Scott* to reject § 1985(3) claim that defendants "discriminated against [the plaintiff] because of his leadership role in protesting the change in work conditions").

1, 1999).[4] At best, then, the law was and remains unclear as to whether whistleblowers qualify for protection under § 1985(3). Therefore, the OAG Defendants and DPS Defendants are entitled to qualified immunity on Plaintiffs' § 1985(3) conspiracy claim, and it must be dismissed.

IV.     State-Law Claims

Having dismissed Plaintiffs' federal-law claims, the Court declines to exercise supplemental jurisdiction over their state-law claims. "While the statute governing supplemental jurisdiction, 28 U.S.C. § 1367, does not require dismissal of pendent state-law claims where all of the federal claims have been dismissed, *see id.* § 1367(c)(3)," *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases), the Second Circuit "has held, as a general proposition, that 'if [all] federal claims are dismissed before trial . . ., the state claims should be dismissed as well,'" *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (alteration in *Uzan*).

---

[4] *Accord Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996) (observing that "[t]o the best of our knowledge, no circuit court has ever held that whistleblowers are a protected class under § 1985(3)," and "declin[ing] to apply § 1985(3) to protect whistleblowers as a class" (citations omitted)); *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (11th Cir. 1992) ("Whistleblowers cannot, by imaginative pleadings, qualify as a class afforded § 1985(3) protection, for they do not possess any of the characteristics—i.e. race, national origin or gender—which are traditionally part and parcel of discrete and insular minorities." (citations omitted)); *Garrie v. James L. Gray, Inc.*, 912 F.2d 808, 813 & n.13 (5th Cir. 1990) (rejecting plaintiff's argument that whistleblowers are a class for purposes of § 1985); *Buschi v. Kirven*, 775 F.2d 1240, 1258 (4th Cir. 1985) ("[W]e do not think that 'whistleblowers' can be said to qualify as a class entitled to the benefits of section 1985(3). 'Whistleblowers' do not meet the test of possessing 'characteristics comparable to those characterizing classes such as race, national origin, and sex.' Nor can they be said to be in 'unprotected circumstances.'" (internal citations omitted)).

V.      Conclusion

For the reasons stated above, Defendants' Motions to Dismiss [Doc. ## 20, 22] are GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

___/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of March, 2010.